# TIFFANY FINE ARTS, INC., ET AL. *v.* UNITED STATES ET AL.

No. 83–1007.   Argued October 31, 1984—Decided January 9, 1985

MARSHALL, J., delivered the opinion for a unanimous Court.

*Michael D. Savage* argued the cause for petitioners. With him on the brief was *David M. Rubin.*

*Deputy Solicitor General Wallace* argued the cause for respondents. With him on the brief were *Assistant Attorney General Archer, Charles E. Brookhart,* and *William A. Whitledge.*\*

JUSTICE MARSHALL delivered the opinion of the Court.

The question presented in this case is whether the Internal Revenue Service (IRS) must comply with the "John Doe" summons procedures of § 7609(f) of the Internal Revenue Code of 1954, 26 U. S. C. § 7609(f), when it serves a summons on a named taxpayer for the dual purpose of investigating both the tax liability of that taxpayer and the tax liabilities of other, unnamed parties.

I

Petitioner Tiffany Fine Arts, Inc., is a holding company for various subsidiaries that promote tax shelters.[1] On October 6, 1981, Revenue Agent Joel Lewis issued four summonses to Tiffany, pursuant to 26 U. S. C. § 7602(a). This provision empowers the IRS to serve a summons on any person, without prior judicial approval, if the information sought is necessary to ascertain that person's tax liability.[2] The

---

\**Richard J. Sideman* filed a brief for First Western Government Securities, Inc., et al. as *amici curiae* urging reversal.

[1] The other petitioners are subsidiaries of Tiffany Fine Arts, Inc. Throughout this opinion, we refer to petitioners collectively as "Tiffany."

[2] This section provides:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person

summonses requested Tiffany's financial statements for the fiscal years ending October 31, 1979, and October 31, 1980, as well as a list of the names, addresses, Social Security numbers, and employer identification numbers of persons who had acquired from Tiffany licenses to distribute a medical device known as the "Pedi-Pulsor."[3]  Tiffany refused to comply with the summonses, and the Government then brought an enforcement action in the United States District Court for the Southern District of New York, pursuant to 26 U. S. C. §§ 7402(b) and 7604(a).

Tiffany opposed enforcement, principally on the ground that the IRS's request for the names of the licensees indicated clearly that the IRS's "primary purpose" was to audit the Pedi-Pulsor licensees, not Tiffany itself.  Tiffany offered to produce records in which the names of the licensees were redacted.  It took the position that, if the IRS were truly

for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect to any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary [or his delegate] may deem proper, to appear before the Secretary [or his delegate] at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

[3] According to Tiffany's president, "the Pedi-Pulsor, is designed to permit bed ridden patients to prevent deep vein thrombosis through leg movement assisted by the Pedi-Pulsor."  Affidavit in Opposition to Order to Show Cause, App. 16–17.

Two of the summonses also requested production of the list of clients who acquired lithographs from Tiffany.  After ascertaining that Tiffany did not in fact market lithographs, the IRS dropped its request for this information.

interested in only Tiffany's liability, the redacted records would be sufficient for an adequate investigation.

According to Tiffany, if the IRS wanted to go further and obtain the names of all the licensees, it could not proceed solely under § 7602, but would have to comply also with the requirements of § 7609(f), which applies to John Doe summonses.[4]  Under § 7609(f), the IRS cannot serve a summons seeking information on the tax liabilities of unnamed taxpayers without obtaining prior judicial approval at an *ex parte* proceeding.

The IRS rejected Tiffany's offer of redacted documents. In an affidavit filed in support of the Government's enforcement petition, Revenue Agent Lewis asserted:

> "I am conducting an investigation, one purpose of which is to ascertain the correctness of the consolidated income tax returns filed by [Tiffany] for the fiscal years ending October 31, 1979, and October 31, 1980.  One aspect of my investigation into the correctness of Tiffany's consolidated corporate income tax returns concerns possible underreporting of income received and questionable business deductions claimed by Tiffany and its subsidiaries."  App. 14a.

In a supplemental affidavit, Agent Lewis conceded that "[i]t is certainly possible that once the individual [Pedi-Pulsor] licensees are identified further inquiry will be made into whether they correctly reported their income tax liabilities." *Id.*, at 24a.  He reasserted, however, that *one* purpose of his investigation was to audit Tiffany; in particular, he sought to ascertain whether Tiffany had failed to report recourse and nonrecourse notes provided to Tiffany by the Pedi-Pulsor licensees.  According to Lewis, the investigation of Tiffany could not be performed properly with redacted documents.

---

[4] "A 'John Doe' summons is, in essence, a direction to a third party to surrender information concerning taxpayers whose identity is currently unknown to the IRS." *In re Tax Liabilities of John Does*, 671 F. 2d 977, 978 (CA6 1982).

The District Court found that the IRS had made a sufficient showing of its interest in auditing Tiffany's returns and enforced the summonses. The United States Court of Appeals for the Second Circuit affirmed. 718 F. 2d 7 (1983). It held that the John Doe provisions of § 7609(f) apply only when "the IRS issue[s] a summons to an identifiable party in whom it ha[s] no interest in order to investigate the potential tax liabilities of unnamed third parties." *Id.*, at 13. Given the District Court's finding that one purpose of the summonses was to investigate Tiffany, § 7609(f) was not relevant here "even assuming that the summonses . . . were issued to Tiffany partly for the purpose of investigating Tiffany's customers." *Id.*, at 13–14.

The Federal Courts of Appeals are divided on the scope of § 7609(f). The Eighth and Eleventh Circuits, like the Second Circuit in this case, have held that the IRS need not comply with § 7609(f) when it seeks information on unnamed third parties as long as one purpose of the summons is to carry out a legitimate investigation of the named summoned party. See *United States* v. *Barter Systems, Inc.*, 694 F. 2d 163 (CA8 1982); *United States* v. *Gottlieb*, 712 F. 2d 1363 (CA11 1983). In contrast, the Sixth Circuit has taken the opposite position, holding that the IRS must comply with § 7609(f) whenever it seeks information on unnamed third parties— even in cases in which one of the purposes of the IRS is to investigate the named recipient of the summons. *United States* v. *Thompson*, 701 F. 2d 1175 (1983). We granted certiorari to resolve this conflict. 466 U. S. 925 (1984). We affirm.

## II

Congress enacted § 7609 in response to two decisions in which we gave a broad construction to the IRS's general summons power under § 7602(a). It is therefore useful to review those cases before embarking on an analysis of the statutory provision.

In *Donaldson* v. *United States*, 400 U. S. 517 (1971), the IRS issued to an employer a § 7602 summons seeking records prepared by the employer that would be relevant to an investigation of the tax liability of one of its employees. The employee obtained a preliminary injunction restraining his employer from complying with the summons. The Government then moved for enforcement. In response, the employer stated that it would have complied with the summons "'were it not for' the preliminary injunction." *Id.*, at 521. The employee, however, filed motions to intervene in the proceedings, under Federal Rule of Civil Procedure 24(a)(2), in order to oppose enforcement. He stated that he had an interest in the outcome of the enforcement action and that this interest would not be adequately represented by his employer. We held that the employee's interest was not legally protectible and affirmed the denial of the employee's motions for intervention.

Four years later, we decided *United States* v. *Bisceglia*, 420 U. S. 141 (1975). In *Bisceglia*, the IRS issued to a bank a § 7602 summons for the purpose of identifying an unnamed individual who had deposited a large amount of money in severely deteriorated bills. The bills appeared to have been stored for a long period of time under abnormal conditions, and the IRS suspected that they had been hidden to avoid taxes. Although we recognized the danger that the IRS might use its § 7602 summons power to "conduct 'fishing expeditions' into the private affairs of bank depositors," *id.*, at 150–151, we concluded that, on the facts of the case, the IRS had not abused its power. Thus, we held that the summons was enforceable.

Section 7609, the provision at issue in this case, was clearly a response to these decisions. Both the Senate and the House Reports accompanying the bill that became § 7609 focused exclusively on the problem of "third-party summonses"—that is, summonses served on a party that, like the

employer in *Donaldson* and the bank in *Bisceglia*, is not the taxpayer under investigation.   S. Rep. No. 94–938, p. 368 (1976); H. R. Rep. No. 94–658, p. 306 (1975).   In fact, *Donaldson* and *Bisceglia* were the only two cases cited in the texts of the Reports.

Referring to *Donaldson*, the House Report noted that, under the then-existing law, "there is no legal requirement that the taxpayer (or other party) to whose business or transactions the summoned records relate be informed that a third-party summons has been served."   H. R. Rep. No. 94–658, at 306–307; see also S. Rep. No. 94–938, at 368. Referring to *Bisceglia*, both Reports stated:

> "In certain cases, where the [IRS] has reason to believe that certain transactions have occurred which may affect the tax liability of some taxpayer, but is unable for some reason to determine the specific taxpayer who may be involved, the [IRS] may serve a so-called 'John Doe' summons, which means that books and records relating to certain transactions are requested, although the name of the taxpayer is not specified."   S. Rep. No. 94–938, at 368; H. R. Rep. No. 94–658, at 306.

Both Reports asserted that the standards enunciated in *Donaldson* and *Bisceglia* might "unreasonably infringe on the civil rights of taxpayers, including the right to privacy." S. Rep. No. 94–938, at 368; H. R. Rep. No. 94–658, at 307. Section 7609 stems from this concern.   To deal with the problem of a third-party summons in a case in which the IRS *knows* the identity of the taxpayer being investigated, Congress enacted §§ 7609(a) and (b); these subsections require that the IRS give notice of the summons to that taxpayer, and give the taxpayer the right "to intervene in any proceeding with respect to the enforcement of such summons." In this provision, Congress modified the result reached in *Donaldson*.

In the case of a John Doe summons, where the IRS *does not know* the identity of the taxpayer under investigation,

advance notice to that taxpayer is, of course, not possible. As a substitute for the procedures of §§ 7609(a) and (b), Congress enacted § 7609(f), which provides:

"Any summons . . . *which does not identify the person with respect to whose liability the summons is issued* may be served only after a court proceeding in which the Secretary establishes that—

"(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

"(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

"(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources" (emphasis added).

See also § 7609(h)(2) (providing that these determinations be made *ex parte*, solely on the basis of the IRS's petition and supporting affidavits). Section § 7609(f) was a response to concerns that our decision in *Bisceglia* did not provide sufficient restraints, in the John Doe context, on the IRS's exercise of its summons power. See *In re Tax Liabilities of John Does*, 671 F. 2d 977, 979 (CA6 1982). With this background in mind, we turn to consider the application of the provision to the facts of this case.

### III

The legal issue here is starkly posed. The District Court found as a matter of fact—and the Court of Appeals affirmed—that the IRS was pursuing a legitimate investigation of Tiffany's tax liability.[5] At the same time, the Court of

---

[5] Tiffany devotes considerable energy to arguing that "the summonses were issued principally with respect to the tax liabilities of Tiffany's clients." Brief for Petitioners 11. Under our holding in this case, it is

Appeals assumed, and the Government does not dispute, that the IRS also intended to investigate the tax liabilities of the unnamed Pedi-Pulsor licensees. The question before us, then, is whether the IRS must comply with § 7609(f) in the case of such dual purpose summonses.

This Court has recognized that there is "a formidable line of precedent construing congressional intent to uphold the claimed enforcement authority of the [IRS] if [this] authority is necessary for the effective enforcement of the revenue laws and is not undercut by contrary legislative purposes." *United States* v. *Euge*, 444 U. S. 707, 715–716 (1980). Just last Term, we reemphasized that "restrictions upon the IRS summons power should be avoided 'absent unambiguous directions from Congress.'" *United States* v. *Arthur Young & Co.*, 465 U. S. 805, 816 (1984) (quoting *United States* v. *Bisceglia*, 420 U. S., at 150). Thus we examine whether the statute and legislative history indicate that Congress expressly considered the problem presented here, and attempt to discern the congressional purposes in enacting § 7609(f).

## A

We find that the language of the statute is of little direct help in determining how to treat dual purpose summonses. By their terms, the John Doe provisions of § 7609(f) apply to a summons "which does not identify the person with respect to whose liability the summons is issued." Tiffany argues that the term "person" in the statute must be read as "person" or "persons." Tr. of Oral Arg. 6. It then contends that, because the Pedi-Pulsor licensees are persons not identified

irrelevant whether this was the IRS's primary or secondary purpose; all that matters is that the IRS was pursuing a legitimate investigation of Tiffany. In any event, "this Court has frequently noted its reluctance to disturb findings of fact concurred in by two lower courts." *Rogers* v. *Lodge*, 458 U. S. 613, 623 (1982). See *Blau* v. *Lehman*, 368 U. S. 403, 408–409 (1962). On the record before us, we see no reason to upset the finding below.

in the summonses, § 7609(f) literally applies. See *United States* v. *Thompson,* 701 F. 2d, at 1178–1179.

The Government's construction is diametrically at odds with Tiffany's:

> "Section 7609(f) by its terms applies only if a summons 'does not identify the person with respect to whose liability [it] is issued.' That simply is not the case here. The summonses enforced by the district court explicitly were issued '[i]n the matter of the tax liability of Tiffany Fine Arts Inc. & Subsidiaries.'" Brief for United States 13.

See *United States* v. *Barter Systems, Inc.,* 694 F. 2d, at 168.

The task that the parties ask us to engage in is to determine whether the statutory reference to "the person" should be read as "every person" or whether it should be read as "at least one person." We are reluctant, on the basis of the statutory language alone, to reach even a tentative conclusion about the scope of § 7609(f). Neither construction strikes us as clearly compelling.

Turning our attention to the legislative history, we note that the facts of this case are different from those of *Donaldson* and *Bisceglia* in one important respect: The summonses here were served on a party that was itself under IRS investigation. Congress did not address this situation in 1976 when it enacted the John Doe provisions. The Reports contain no mention of a summons issued for the dual purpose of investigating both the tax liability of the summoned party and the tax liabilities of unnamed parties. They focus exclusively on summonses issued to parties not themselves under investigation.[6] We conclude that Congress did not expressly consider the problem of dual purpose summonses.

---

[6] *Amici* First Western Government Securities and Samuels, Kramer & Co. argue that the Reports refer to a case in which the summoned party was itself under investigation. The summons referred to in the example cited by *amici* was issued "to obtain the names of corporate shareholders involved in a taxable reorganization which had been characterized by the

## B

We, therefore, turn to consider whether dual purpose summonses give rise to the same concerns that prompted Congress to enact § 7609(f). The Reports discuss only one specific congressional worry: that the party receiving a summons would not have a sufficient interest in protecting the privacy of the records if that party was not itself a target of the summons. S. Rep. No. 94–938, at 368–369; H. R. Rep. No. 94–658, at 307. Such a taxpayer might have little incentive to oppose enforcement vigorously. Then, with no real adversary, the IRS could use its summons power to engage in "fishing expeditions" that might unnecessarily trample upon taxpayer privacy. S. Rep. No. 94–938, at 373; H. R. Rep. No. 94–658, at 311. Congress determined that when the IRS uses its summons power not to conduct a legitimate investigation of an ascertainable target, but instead to look around for targets to investigate, the privacy rights of taxpayers are infringed unjustifiably. See S. Rep. No. 94–938, at 368; H. R. Rep. No. 94–658, at 307.

corporation (in a letter to its shareholders) as a nontaxable transaction." S. Rep. No. 94–938, p. 373 (1976); H. R. Rep. No. 94–658, p. 311 (1975). According to *amici,* in such a case the corporation itself must have been under investigation.

The Reports do not indicate, however, the name of the case. Nor do they indicate whether the summons was issued to the corporation, or whether the IRS was in fact interested in the corporate tax liability. *Amici* do not tell us to which actual case the Reports referred. The Government, in contrast, states that the example in question could have referred to only one reported case: *United States* v. *Armour,* 376 F. Supp. 318 (Conn. 1974). In that case, the IRS issued summonses to bank officials in order to learn the names of shareholders for whom the bank held shares.

Given the scarcity of facts provided with the example, we simply cannot tell whether a dual purpose summons was involved. Moreover, even if we found a case that was consistent with *amici's* reading of the example, we would have no way of knowing whether Congress was referring to that case rather than to *Armour.* We are therefore disinclined to place great weight on the argument advanced by *amici.*

In response to this concern, §§ 7609(a) and (b) gave the real parties in interest—those actually being investigated—the right to intervene in the enforcement proceedings. Similarly, the John Doe requirements of § 7609(f) were adopted as a substitute for the procedures of §§ 7609(a) and (b). In effect, in the John Doe context, the court takes the place of the affected taxpayer under §§ 7609(a) and (b) and exerts a restraining influence on the IRS. However, § 7609(f) provides no opportunity for the unnamed taxpayers to assert any "personal defenses," such as attorney-client or Fifth Amendment privileges that might be asserted under §§ 7609(a) and (b). See H. R. Rep. No. 94–658, at 309; see also S. Rep. No. 94–938, at 370. What § 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer.

When, as in this case, the summoned party is itself under investigation, the interests at stake are very different. First, by definition, the IRS is not engaged in a "fishing expedition" when it seeks information relevant to a legitimate investigation of a particular taxpayer. In such cases, any incidental effect on the privacy rights of unnamed taxpayers is justified by the IRS's interest in enforcing the tax laws. More importantly, the summoned party will have a direct incentive to oppose enforcement. In such circumstances, the vigilance and self-interest of the summoned party—complemented by its right to resist enforcement—will provide some assurance that the IRS will not strike out arbitrarily or seek irrelevant materials. See, e. g., *United States* v. *Powell*, 379 U. S. 48, 57–58 (1964) ("[The IRS] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed"). Here, for example, Tiffany argued vigorously—albeit unsuccessfully—against enforcement of the summonses.

This is not to say, of course, that as long as the summoned party is under investigation, the IRS will be guaranteed an adversary. It is possible that the summoned party, even if it is itself being investigated, will not oppose enforcement, and that as a result the IRS might obtain some information that is relevant only to the liabilities of unnamed taxpayers. We recognize that the privacy rights of the unnamed taxpayers might then be unnecessarily trampled upon. Congress, however, did not seek to ensure that the IRS have an adversary in all summons proceedings. All that it did was require that a party with a real interest in the investigation—or the district court in the John Doe context—have standing to challenge the IRS's exercise of its summons authority. It is not up to us, in construing the scope of this authority, to identify a problem that did not trouble Congress, or to attempt to correct it. We therefore conclude that, where the summoned party is itself being investigated, that party's self-interest provides sufficient protection against the evils that Congress sought to remedy when it enacted § 7609(f).

We reject Tiffany's argument that, under the decision below, the IRS can circumvent the requirements of § 7609(f) merely by stating that the summoned party is under investigation. We do not find that argument persuasive for two reasons. First, in such a case, the summoned party would still have a sufficient interest in opposing enforcement, as it would have no way of ascertaining that the IRS was not in fact seeking to investigate it. This party would be an interested adversary, and the concerns to which § 7609(f) was addressed would thus be significantly attenuated. More importantly, if the district court finds in the enforcement proceeding that the IRS does not in fact intend to investigate the summoned party, or that some of the records requested are not relevant to a legitimate investigation of the summoned party, the IRS could not obtain all the information it sought unless it complied with § 7609(f).

Our conclusion that the congressional concerns are adequately met without resort to § 7609(f) when the summoned

party is itself under investigation should not be read to imply that the IRS can obtain from that party, without complying with § 7609(f), information that is relevant only to the investigation of unnamed taxpayers. In order to obtain such information, the IRS would have to satisfy the requirements of § 7609(f). Therefore, when the IRS does not comply with § 7609(f), the focus must be on whether the information sought is relevant to the investigation of the summoned party. Thus, we discuss next whether the names of the Pedi-Pulsor licensees were relevant to an investigation of Tiffany's tax liability.

## C

During the enforcement proceedings, Tiffany argued that it was possible to perform an investigation of its tax liability without resort to the names of all the Pedi-Pulsor licensees. We have never held, however, that the IRS must conduct its investigations in the least intrusive way possible. Instead, the standard is one of relevance. See *United States* v. *Powell, supra,* at 57. The Government argues persuasively that contact with the licensees might be necessary to verify that the transactions reported by Tiffany actually occurred. In fact, Tiffany itself acknowledged the relevance of the requested information, as it offered the IRS the names of certain licensees: "They might want to check a number of them at random, and this we are willing to do because we understand that they are entitled to review [Tiffany's] books." App. 35. Tiffany refused, however, to provide all of the names, as it did not think that in the course of its investigation of Tiffany, the IRS would want to audit "50 out of 50 or 150 out of 150 participants." *Ibid.*

On the record before us, we agree with the Government that the names of the licensees "may be relevant" to the legitimate investigation of Tiffany. *United States* v. *Powell, supra,* at 57. The decision of how many, and which, licensees to contact is one for the IRS—not Tiffany—to make. Having already found that Congress provided no "unambig-

uous direction" on the question whether the IRS needs to comply with § 7609(f) in the case of dual purpose summonses, and that the IRS's failure to comply with these requirements when serving such summonses does not undermine the goals that Congress sought to promote through § 7609(f), we conclude that the summonses here were properly enforced.[7]

## IV

We hold that where, pursuant to § 7602, the IRS serves a summons on a known taxpayer with the dual purpose of investigating both the tax liability of that taxpayer and the tax liabilities of unnamed parties, it need not comply with the requirements for John Doe summonses set out in § 7609(f), as long as all the information sought is relevant to a legitimate investigation of the summoned taxpayer. The judgment of the Court of Appeals is therefore affirmed.

*It is so ordered.*

---

[7] We also find that it was well within the District Court's discretion to conclude, after reviewing the submissions of the parties and holding oral argument, that an evidentiary hearing on the question of enforcement was unnecessary. See *United States* v. *Morgan Guaranty Trust Co.*, 572 F. 2d 36, 42–43, n. 9 (CA2), cert. denied *sub nom. Keech* v. *United States*, 439 U. S. 822 (1978). As we stated in *Donaldson* v. *United States*, 400 U. S. 517, 527 (1971), "the burden of showing an abuse of the court's process is on the taxpayer." Even if factually true, the central argument raised by Tiffany before the District Court—that the IRS's primary, but not sole, interest was to investigate the licensees—did not provide a basis for quashing the summonses.