**WOODEN HORSE INVESTMENTS, INC., Petitioner,**

v.

**UNITED STATES of America, et al., Respondents.**

**Nos. CY–91–3041–FVS, CS–92–76–FVS and CY–92–3042–FVS.**

United States District Court, E.D. Washington.

Aug. 12, 1992.

On Motion to Alter or Amend Nov. 3, 1992.

---

Darrell D. Hallett, Larry N. Johnson, Chicoine & Hallett P.S., Seattle, Wash., for petitioner.

William D. Hyslop, U.S. Atty., Spokane, Wash., Deirdre A. Donnelly, U.S. Dept. of Justice, Tax Div., Washington, D.C., for respondents.

## ORDER RE: ENFORCEMENT OF SUMMONSES

VAN SICKLE, District Judge.

BEFORE THE COURT are Wooden Horse Investments, Inc. ("Wooden Horse") petitions to quash three summonses issued by the Internal Revenue Service Agent George Such and the Internal Revenue Service's motions to enforce summonses at

issue in CY–92–3042–FVS and CY–91–3041–FVS. Larry Johnson represents the petitioners in this action; Assistant United States Attorney Deirdre Donnelly represents the United States Department of Internal Revenue Service ("IRS") and Agent George Such.

This Court has jurisdiction to hear a petition to quash summons pursuant to 26 U.S.C. § 7609, when the person summonsed resides or is found in the Court's district. 26 U.S.C. § 7609(h)(1). The summonsed party in these cases was Glen Rasmussen who resides in Wapato, Washington, which is within the Eastern District of Washington.

The first petition filed by Wooden Horse is to quash a May 7, 1991, summons, issued by Agent George Such. The summons includes a notice of examination of Glen Rasmussen, the former accountant of Wooden Horse, and documents relating to Wooden Horse's taxable year ending August 31, 1987. The summons at issue requests that Mr. Rasmussen provide:

> All books, records, canceled checks, financial statements, letters memoranda [sic], or other documents in your possession or under your control pertaining to the claimed "participation" or "bonus" interest paid by Wooden Horse Investments, Inc. to the James M. Hill IV, PC Pension and profit Sharing Trust and the Logging Management Pension Plan and Profit Sharing Trust, for the period August 15, 1975 through August 31, 1987.

May 7, 1991, Summons to Glen Rasmussen (Ct.Rec. 1, Ex. A).

While the petition to quash the May 7, 1991 summons was pending in this court, Agent Such issued two additional summonses for Glen Rasmussen and records relating to Wooden Horse's tax years August 15, 1975, through August 31, 1988.[1] The Government abandoned the second summons and has not moved for enforcement. Wooden Horse's Petition to Quash Summons in CS–91–76–FVS is moot.

The pending actions involve the first and third summonses issued. "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions ..." Fed. R.Civ.P. 42(a). The issues and facts surrounding the first and third summonses are similar and interrelated. Cases CY–91–3041–FVS and CY–92–3042–FVS are joined for purposes of determining whether additional discovery is needed and whether enforcement should be granted.

Wooden Horse alleges that Agent Such did not issue the summonses in good faith for the purpose of ascertaining the accuracy of Wooden Horse's tax liability, but rather in retaliation for Wooden Horse's refusal to extend a statute of limitations and in anticipation of litigation in the tax court to avoid the tax court rules of discovery. Wooden Horse further alleges that the IRS already has all relevant documents in its possession.

The Government contends that the summonses should be enforced based on Agent Such's declaration that he needs the requested documents and information from Mr. Rasmussen in order to verify Wooden Horse's tax liability. The Government argues that whether Agent Such has received any of the documents from Wooden Horse is immaterial to its request to receive the same documents from Glen Rasmussen.

---

1. On January 31, 1992, Agent Such issued the second summons for Glen Rasmussen for records relating to tax years August 15, 1975 through August 31, 1988, in the examination of Wooden Horse's tax year ending August 31, 1988. Wooden Horse's petition to quash that summons initiated the file *Wooden Horse Investments, Inc., v. United States of America, et al.,* CS–92–76–FVS, E.D.Wash., filed February 18, 1992.

On February 25, 1992, Agent Such issued a third summons for Glen Rasmussen and Wood-

en Horse records relating to "participation" or "bonus" interest in the tax years of August 15, 1975 through August 31, 1988, in the examination of Wooden Horse's tax year ending August 31, 1988. Wooden Horse's petition to quash that summons initiated the file *Wooden Horse Investments, Inc., v. United States of America, et al.,* CY–92–3042–FVS, E.D.Wash., filed March 16, 1992.

In oral argument the IRS counsel indicated that the third summons superseded the second summons which had been defective in form.

In order to support their allegations that the IRS issued the summonses for an impermissible purpose, or that the requested material was not relevant to determining tax liability, Wooden Horse moved this Court for permission to conduct discovery. An evidentiary hearing was held on July 29, 1992 to determine if discovery should be allowed.[2] During the evidentiary hearing, Agent George Such testified under direct and cross examination.

Additional information is not needed to determine whether the summonses should be enforced. Wooden Horse's request for discovery is denied.

The IRS has power to summons books and witnesses "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability ..." 26 U.S.C. § 7602(a).

The Supreme Court recognizes that the IRS's authority to summon under section 7602 could be abused, which could involve invasion of privacy. *United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975). Some protection against abuse is available in the requirement that an IRS summons can be enforced only by the courts. *Id.* The court may choose to enforce the summons, quash the summons, or enforce a more narrow summons with restrictions to narrow it "no broader than necessary to achieve its purpose." *Id.* at 151, 95 S.Ct. at 921.

■ In order to enforce a summons, a court must make four factual determinations:

(1) whether the investigation is conducted for a legitimate purpose; (2) whether the material sought is relevant to that purpose; (3) that the IRS does not already possess the material sought; and (4) that the IRS has complied with administrative regulations.

*United States v. Author Services, Inc.,* 804 F.2d 1520, 1524 (9th Cir.1986) (citing *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964)).

■ The summons must have been issued in the good-faith pursuit of purposes outlined in section 7602, which include the investigation of civil tax determination or collection. *United States v. La Salle Nat. Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). The Court noted that "the purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602 by issuing the summons. Without doubt, this burden is a heavy one." *Id.* at 316, 98 S.Ct. at 2367. Even if some impermissible purposes are sought through the summons, the summons should be enforced if the IRS is still pursuing at least one valid purpose, such as determination of tax liability. *Tiffany Fine Arts, Inc. v. United States,* 469 U.S. 310, 318, 105 S.Ct. 725, 729, 83 L.Ed.2d 678 (1985).

■ In order to quash a summons, the petitioner would need to show that the IRS issued the summons in bad faith or for abuse of process. *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing ... that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined.

*Id.* at 58, 85 S.Ct. at 255.

There is no contention in this case that the fourth *Powell* element has not been met. Nor is there a contention that the IRS already has in its possession the infor-

---

**2.** The court followed procedures suggested in *U.S. v. Church of Scientology,* 520 F.2d 818, 824 (9th Cir.1975) (party opposing enforcement of the summons "must be afforded at least *some* opportunity to substantiate its allegations").

mation about the Rasmussen lawsuit against Wooden Horse, although Wooden Horse notes that it has already provided the IRS with most of the other information requested in the summonses. The two issues in contention are whether the summonses were issued for a legitimate purpose and whether the material sought is relevant to determination of Wooden Horse's tax liability.

Wooden Horse suggests that Agent Such's request for information about Mr. Rasmussen's lawsuit against Wooden Horse is irrelevant to the determination of Wooden Horse's tax liability. Wooden Horse further suggests that the timing of Agent Such's issuance of the first summons indicates that the summons was issued in retaliation for Wooden Horse's refusal to extend the statute of limitations and to refuse to supply Agent Such with information about the lawsuit instigated by Mr. Rasmussen. Wooden Horse contends that Agent Such issued the second and third summonses which include examination of additional tax years in order to receive the same documents that the IRS would have received from the first summons if it were to be enforced.

Agent Such's testimony at the hearing does not refute Wooden Horse's speculations. Agent Such made it apparent that his particular purpose in issuing the first summons for Glen Rasmussen was to enable the IRS to learn more about a lawsuit that Mr. Rasmussen had filed against Wooden Horse. In particular, Agent Such suspected that he might glean information about the so-called "participation" or "bonus" interest that Wooden Horse has been deducting as business expenses.

Agent Such's request for information regarding the lawsuit was spurred by Wooden Horse's tax deductions of over $25 million interest on $100,000 worth of debt. The disproportionate amount of interest to principal owing alerted Agent Such to the possibility that the "participation" or "bonus" interest scheme, that may have involved Glen Rasmussen as one of the financiers, was possibly an unlawful structuring of profit dispersement in order to minimize tax liability. With this suspicion in mind, Agent Such requested information from both Wooden Horse and Glen Rasmussen about the lawsuit against Wooden Horse.

Agent Such revealed frustration that he was unable to find out about the Rasmussen lawsuit and that Wooden Horse would not cooperate in revealing information about the lawsuit. Although Agent Such received copies of some of the court documents relating to the lawsuit, he was unable to derive information relevant to Wooden Horse's tax liability from those documents.[3] Agent Such testified that he issued the summons immediately preceding the tolling of the statute of limitations, which Wooden Horse had declined to extend, and less than a week prior to issuing a Notice of Deficiency of taxes because of disallowing the interest deductions. Agent Such testified that the summonsed information still would be helpful in determination of Wooden Horse's tax liability.

■ Even if Agent Such issued the first summons in retaliation for Wooden Horse's refusal to extend the statute of limitations or refusal to cooperate, the requested information about the lawsuit and Wooden Horse's debt structures likely would aid the IRS in determining Wooden Horse's tax liability for the taxable years ending August 31, 1987, and August 31, 1988. Under *La Salle*, the presence of just one such permissible purpose for the summonses is adequate to satisfy the first element of *Powell*. Petitioners next argue that even if the summonses were issued for a proper purpose, the information gained from Rasmussen about his lawsuit would not be relevant to determination of Wooden Horse's tax liability. The Ninth Circuit adopted the relevance standard established by the Second Circuit that documents are relevant if "the inspection sought would throw light upon the correctness of the taxpayer's return." *United States v.*

---

**3.** The Rasmussen lawsuit has since been settled and the file sealed at the request of all of the parties involved.

*Ryan*, 455 F.2d 728, 733 (9th Cir.1971); *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir.1980).

> The question, and it is not always one that lends itself easily to solution, is whether from what the Government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable—in short, whether the "might" in the articulated standard "might throw light upon the correctness of the return," is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered.

*United States v. Goldman*, 637 F.2d 664, 667 (9th Cir.1980) (citing *United States v. Harrington*, 388 F.2d 520, 524 (2d Cir.1969)).

■ The statutory language of section 7602 "reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation ..." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814, 104 S.Ct. 1495, 1501, 79 L.Ed.2d 826 (1984). The IRS does not have the burden to show that the requested documents "are actually relevant in any technical, evidentiary sense." *Id.*

■ Even if Agent Such's issuance of the summonses was in retaliation for lack of cooperation by Wooden Horse, the information sought by Agent Such regarding Rasmussen's lawsuit and Wooden Horse's corporate structure "might throw light" on Wooden Horse's business expenses and is within the parameters defined as "relevant" information. *See e.g., United States v. Arthur Young & Co.*, 465 U.S. 805, 815, 104 S.Ct. 1495, 1501, 79 L.Ed.2d 826 (1984); *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir.1980).

The first and third summonses conform to the *Powell* requirements of being for a permissible purpose and relevant to determination of tax liability. Enforcement of the summonses is appropriate.

If a court determines that enforcement of the summons is proper, the court may choose to place restrictions on the IRS's use of the information obtained through the summons. *United States v. Author Services, Inc.*, 804 F.2d 1520, 1525 (9th Cir.1986). As in *Author Services,* the petitioner in this case has raised questions about whether the IRS will use the information it obtains through the summonses for purposes of litigation in tax court. The court in *Author Services* remedied petitioners' concerns by applying the following restriction: "The documents produced in response to the summons shall not be delivered by the IRS to any other government agency unless criminal tax prosecution is sought or an order of court is obtained." *Id.* at 1525 n. 2. Those restrictions are equally appropriate in this case.

IT IS SO ORDERED:

1. Wooden Horse's Petition to Quash filed in CS–92–76–FVS is moot.

2. Wooden Horse's Petitions to Quash the May 7, 1991, and the February 25, 1992, summonses for Glen Rasmussen by Agent George Such on behalf of the Internal Revenue Service, filed in CY–91–3041–FVS and CY–92–3042–FVS are DENIED. The IRS Cross Petitions for Enforcement are GRANTED. However, the IRS may not release any information it obtains through those summonses to any other government agency or private entity unless criminal tax prosecution is sought or an order of court is obtained.

IT IS SO ORDERED. The Clerk is hereby directed to enter this Order, furnish copies to counsel, and close these cases.

## ON MOTION TO ALTER OR AMEND

BEFORE THE COURT is Respondent's Motion to Alter or Amend Judgment, Ct. Rec. 35. Telephonic oral argument was heard in this matter on October 2, 1992. Petitioner was represented by Larry Johnson. Respondent was represented by Deirdre Donnelly. Having reviewed the record, heard from counsel, and being fully advised in this matter, the Court enters this order to memorialize its ruling.

Respondent, the Internal Revenue Service ("IRS"), moves the Court to alter or amend its previous order enforcing two

IRS third-party summonses.[1]  The IRS requests that the Court remove the following restriction: "However, the IRS may not release any information it obtains through those summonses to any other government agency or private entity unless criminal tax prosecution is sought or an order of court is obtained."[2]  Ct.Rec. 34 at 11.

The IRS contends that the Court's authority to restrict the summons is questionable; that the restriction was not requested by the Petitioner; and that the restriction is not necessary in light of the facts of this case.  Petitioner objects to alteration of the order, arguing that the Petitioner clearly indicated that it wanted restrictions and that the restrictions imposed by the Court were within its authority under Ninth Circuit law and adequately protected Petitioner's interests, despite the fact that the Court denied its petitions to quash the summonses.

### a.  Court's Authority to Restrict IRS Summons

The IRS may have a summons enforced, if the IRS can "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed ..." *U.S. v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

■ A district court may restrict a summons in order to protect the taxpayer's rights that the IRS will not use information obtained through the summonses for improper purposes.  *United States v. Author Services, Inc.*, 804 F.2d 1520, 1525 (9th Cir.1986); *United States v. Zolin*, 491 U.S. 554, 561, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989) (affirming the court of appeals' restriction on dissemination of information obtained through IRS summons).  The court is not limited to either enforcing the

summons or denying enforcement.  *Author Services*, 804 F.2d at 1525.

The following restriction on an IRS summons was used in *Author Services:* "The documents produced in response to the summons shall not be delivered by the IRS to any other government agency unless criminal tax prosecution is sought or an order of court is obtained."  *United States v. Author Services, Inc.*, 804 F.2d 1520, 1525 (9th Cir.1986).  The Court has the authority to place restrictions on the distribution of information obtained through an IRS summons.

### b.  No Request for Restriction

■ The IRS argues that Petitioner never requested restrictions be placed on the summonses and therefore the Court's restrictions were inappropriate.  In the petitions to quash summons, Petitioner stated that they were concerned that the IRS was going to use the summonsed information for improper purposes and to circumvent tax court discovery rules.  The basis for their petition to quash the summonses was that the IRS had already received all of the documents from Wooden Horse that it was attempting to summons from Glen Rasmussen, Wooden Horse's third party record keeper.

Petitioner contends that the Court was correct in assuming that Wooden Horse desired the restrictions and that the restrictions were appropriate.  Petitioner states that if the Court had made a preliminary ruling on enforcement of the summonses, Petitioner would have then requested restrictions on the enforcement.  It was clear from the pleadings and supporting documents that Petitioner was concerned about the use and distribution of summonsed information.  Placing restrictions on the dissemination of the information obtained through the summonses was a reasonable way to safeguard Petitioner's interests.

---

1.  The Order Enforcing Summonses was filed as Ct.Rec. 34 in CY–91–3041–FVS and Ct.Rec. 10 in CY–92–3042–FVS.  This order will refer to the court record numbers of the earlier file, CY–91–3041–FVS.

2.  The restriction was adapted from *United States v. Author Services, Inc.*, 804 F.2d 1520, 1525 (9th Cir.1986).

**1494**

### c. No Restrictions Are Necessary

The IRS argues that there is no factual basis for requiring restrictions in this case. The Court held an evidentiary hearing on July 29, 1992, to determine whether the parties should be allowed to conduct discovery prior to the Court's ruling on enforcement of the summonses. At the hearing, Agent George Such, the IRS agent who issued the summonses, testified under direct and cross examination.

The IRS has broad summons power established in 26 U.S.C. § 7602. As noted by the Supreme Court, an IRS summons should be enforced if the IRS is pursuing at least one valid purpose, such as determination of tax liability, even if some impermissible purposes are sought through the summonses. *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 319, 105 S.Ct. 725, 729, 83 L.Ed.2d 678 (1985).

Agent Such's testimony revealed that prior to issuing the summonses, he already had access to most, if not all, of the documents that he was requesting from Glen Rasmussen, as well as access to hundreds of documents relating to Wooden Horse gathered from other government agencies. Agent Such testified that one of his purposes in issuing the summonses was to gather information about the *Rasmussen v. Wooden Horse* lawsuit [3], which Wooden Horse would not disclose to him. Agent Such expressed special interest in the "participation" or "bonus" interest expenses included in Wooden Horse's documents.

As the Court noted in its order granting enforcement of the summonses, Agent Such's testimony at the evidentiary hearing did not refute Wooden Horse's speculations that the summonses were issued for improper purposes. There may be impermissible purposes for which Agent Such issued the summonses. However, Agent Such stated that determination of Wooden Horse's tax liability was one purpose for issuing the summonses. Determination of tax liability is a permissible purpose.

The Court entered the restrictions to allow the IRS to obtain information for the permissible purpose of determining Wooden Horse's tax liability while still protecting Wooden Horse's rights against enforcement of summonses issued for impermissible reasons.

The IRS theorizes that the Court's restrictions will "spark additional litigation between the parties," cause delays in obtaining information from Wooden Horse, and prevent the IRS from consulting with IRS legal counsel because the Commissioner of the Internal Revenue is a separate entity from the Office of General Counsel, although both are in the Department of the Treasury.

The IRS is misconstruing the plain meaning of the order to argue that the order restricts their ability to confer with IRS counsel. The order restricts dispersement of the information by the IRS "to any *other* government agency or private entity." Ct.Rec. 34 at 11 (emphasis added). The IRS may release information to IRS counsel for the purpose of determining Wooden Horse's tax liability or for any of the purposes identified in 26 U.S.C. § 7602. The Court's restriction prohibits distribution of the summonsed information to government agencies outside of the Internal Revenue Service or to private entities "unless criminal prosecution is sought or an order of the court is obtained." Ct.Rec. 34 at 11.

There is no basis to amend or alter the order previously entered in these cases.

IT IS HEREBY ORDERED that Respondent's Motion to Alter or Amend Judgment, Ct.Rec. 35, is DENIED.

IT IS SO ORDERED. The Clerk is hereby directed to enter this order and provide copies to counsel and close this file.

---

**3.** This lawsuit was initiated by Glen Rasmussen against Wooden Horse. The *Rasmussen v. Wooden Horse* lawsuit was settled and the court file sealed prior to the evidentiary hearing in these cases.