[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2009
THOMAS K. KAHN
CLERK

No. 08-12053

_____

D. C. Docket No. 07-01816-CV-TWT-1

NERO TRADING, LLC,
SADDLEBROOK TRADING, LLC,
SEVERUS FUND, LLC,
BUTLER FUND, LLC,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA, DEPARTMENT
OF THE TREASURY, Internal Revenue Service,

Defendant-Appellee.

_____

No. 08-12879

_____

D. C. Docket No. 07-00059-MC-T-30-MSS

IRONWOOD TRADING, LLC,
LONSWAY TRADING, LLC,

BARTON 2005 TRUST,
LANCER A. BARTON,

                                                      Plaintiffs-Appellants,

                         versus

INTERNAL REVENUE SERVICE,

                                              Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
and the Middle District of Florida

_____

(June 10, 2009)

Before BIRCH and BARKETT, Circuit Judges, and KORMAN,[*] District Judge.

PER CURIAM:

This consolidated appeal centers on the Internal Revenue Service ("the Service") and the appropriate limits of its summons power. Nero Trading, LLC, et al., ("Nero Trading") and Ironwood Trading, LLC, et al., ("Ironwood Trading") (collectively, "Appellants") appeal the orders of the United States District Court for the Northern District of Georgia (re Nero Trading) and the United States District Court for the Middle District of Florida (re Ironwood Trading). Nero

---

[*] Honorable Edward Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Trading appeals the district court's denial of its petition to quash administrative summonses issued by the Service and Ironwood Trading appeals the district court's denial of its like motion to quash and the court's grant of the government's motion to enforce the summonses. The Appellants argue that the district courts erred in finding that the government made a prima facie showing that the summonses should be enforced under United States v. Powell, 379 U.S. 48, 85 S. Ct. 248 (1964) and contend that enforcement of the summonses constituted an abuse of the courts' processes. Because the district court did not explain its decision to not hold an evidentiary hearing in the Nero Trading case and did not sufficiently explain its rationale for denying Nero Trading's motion to quash the summonses, we cannot adequately review the district court's decision in that case. As regards the Ironwood Trading case, we find that the district court did not abuse its discretion in denying Ironwood's motion to quash and granting the government's motion to enforce the summonses. Accordingly, because we conclude that Nero Trading has been deprived of a fair opportunity to substantiate its claims, we REVERSE and REMAND to the United States District Court for the Northern District of Georgia for proceedings consistent with this opinion. We AFFIRM the judgment of the United States District Court for the Middle District of Florida.

## I. BACKGROUND

Given the complex nature of the cases before us, we begin with a look at the transactions giving rise to the summonses in question. We then trace the procedural history of each case in order to better acquaint ourselves with the blizzard of underlying facts. Once in command of the facts, we turn to the Appellants' arguments.

A. Tax Shelters

Both Nero Trading and Ironwood Trading received administrative summonses from the Service. In general, the summonses requested information regarding legal and tax advice obtained by the Appellants in relation to distressed asset and debt ("DAD") transactions. In particular, the summonses requested testimony and documents pertaining to (1) the anticipated tax benefits of the DAD transactions; (2) engagement letters, invoices, and billing records for legal, management, or tax advice; (3) correspondence and notes of discussions with the entity at issue in each summons; and (4) any legal or tax advice with respect to the DAD transactions.

In accordance with a publicly released Coordinated Issue Paper ("CIP") dated 18 April 2007, the Service has determined that certain DAD transactions constitute tax shelters that generate tax "losses" that are not allowable. Nero, R1-15, Exh. 2 at 1. These transactions generally involve the use of distressed assets to

shift economic losses from a tax indifferent party to a United States taxpayer.  In this case, the tax indifferent parties are Brazilian retail stores carrying distressed debt in the form of consumer accounts receivable.  According to the Service, "the effect [of these transactions] is that the U.S. taxpayer is benefiting [sic] from the built-in economic losses in the [Brazilian] party's distressed asset when the U.S. taxpayer did not incur the economic costs of that asset."  Nero, R1-15, Exh. 2 at 1. The Appellants contend that their bad-business debt deductions, taken pursuant to 26 U.S.C. § 166, do not fall under the scheme described by the Service in its CIP. The Appellants argue that they acquired the distressed debt from the Brazilian retail stores in order to collect upon it, not to dispose of it.  Because the CIP would disallow a United States taxpayer from benefitting from a built-in loss <u>upon disposition </u>of the distressed asset, the Appellants assert that their deductions are readily distinguishable from those described in the CIP.

B.  <u>Nero Trading</u>

According to the Service, Nero Trading, LLC and Saddlebrook Trading, LLC are entities that filed tax returns claiming losses from DAD transactions substantially similar to those described in the CIP.  Alexander J. Gallo, Jr. ("Gallo") indirectly owns 99.6% of both Nero Trading, LLC and Saddlebrook,

5

LLC. Nero Trading, LLC and Saddlebrook Trading, LLC are limited liability companies that are treated as partnerships for tax purposes. As such, both function as pass-through entities with no entity-level income tax liability. Each passes its respective income, deductions, gains and losses on to its partners. Because Gallo indirectly owns most of Nero Trading, LLC and Saddlebrook Trading, LLC, on 25 June 2007, the Service issued summonses (for Nero Trading, LLC and Saddlebrook Trading, LLC) to Gallo to give testimony and produce the materials as described in the summonses. The summonses concerned the taxable period 1 January 2003 through 31 December 2004 for Nero Trading, LLC and 1 January 2004 through 31 December 2004 for Saddlebrook Trading, LLC.

The issuing revenue agent for the summonses was Piotr Kleszcz and the approving agent was Larry Weinger. The summonses listed the date for appearance as 25 July 2007. On 13 July 2007, Nero Trading filed a petition to quash the summonses with the United States District Court for the Northern District of Georgia. Before the district court entertained the petition, the Service issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Nero Trading, LLC on 18 July 2007.[1] The Service has described FPAA as "the ticket to the Tax Court in the case of a partnership" or "the equivalent of the notice of

---

[1] Saddlebrook Trading, LLC did not receive a FPAA.

deficiency issued in the case of an individual taxpayer." Supp. Materials, Service

Memo (12 January 09) at 4-5 n.3 (quotation marks and citation omitted).

According to Weinger, "the IRS issued the FPAA because the statute of limitations

in which to do so was soon to expire" and the tax matters partner for both Nero

Trading, LLC and Saddlebrook Trading, LLC refused to extend it in order for the

Service to complete its examination.[2] Nero, R1-15, Weinger Dec. at 3. On 28

September 2007, the Service filed its motion to deny the petition to quash and for

enforcement of the summonses. The district court ultimately denied the Service's

motion to enforce the summonses and denied Nero Trading's petition to quash.

Nero Trading filed a motion to vacate or reconsider which the district court denied

on 19 February 2008.

C. <u>Ironwood Trading</u>

Ironwood Trading's background roughly parallels that of Nero Trading.

According to the Service, Ironwood Trading, LLC and Lonsway Trading, LLC are

entities that filed returns claiming losses from DAD transactions substantially

---

[2] Weinger also indicated that Nero Trading, LLC subsequently petitioned the United States Tax Court challenging the Service's determinations in the FPAA. [Nero, R1-15, Weinger Dec. at 3].

similar to those described in the CIP. In this case, Lancer Barton ("Barton") indirectly owns 96.04% of Ironwood Trading, LLC and Lonsway Trading, LLC. Ironwood Trading, LLC and Lonsway Trading, LLC are also limited liability companies that are treated as partnerships for tax purposes. Similar to Nero Trading, the Service summoned Barton to testify and produce documents relevant to returns filed by Ironwood Trading, LLC, Lonsway Trading, LLC, Barton Trust 2005, and by Barton individually. The summonses concerned the taxable year 2004 for Ironwood Trading, LLC, the years 2003 and 2004 for Lonsway Trading, LLC, and the year 2005 for both Barton 2005 Trust and Barton individually. In this case, Weinger was the issuing revenue agent and the return date listed for the summonses was 21 August 2007.

On 20 July 2007, Ironwood Trading filed a petition to quash the summonses in the United States District Court for the Middle District of Florida. Five days later, the Service issued a FPAA to Lonsway Trading, LLC. As in Nero Trading, the Service claimed that it issued the FPAA because the statute of limitations in which to do so was soon to expire and the tax matters partner for Lonsway Trading, LLC refused to extend it in order for the Service to complete its examination. According to Weinger, Lonsway Trading, LLC also subsequently petitioned the United States Tax Court challenging the Service's determinations in

8

the FPAA.

On 3 October 2007, the Service filed a motion to deny the petition to quash and to enforce the summonses. In response, Ironwood Trading requested discovery and an evidentiary hearing. Before the district court ruled on the discovery request, Ironwood Trading served the government with a request for admissions, interrogatories, and a request for production of documents. The government responded with a motion to quash the discovery request and for a protective order against further discovery requests pending a decision by the district court on the government's motion to deny the petition to quash and for enforcement of the summonses.

The district court ultimately conducted a limited evidentiary hearing. Ironwood Trading subpoenaed five Service employees to produce documents and testify at the hearing. The Service moved to quash all of the subpoenas except for the one for testimony by Weinger. After Weinger testified at the hearing, Ironwood's attorney advised the district court that he had taken "too much time" in his examination of Agent Weinger, and that "in light of [the] agent's candid testimony about speaking with district counsel, Letkewicz, about these ongoing audits, the Petitioners rest [without calling any additional witnesses]." Ironwood, R2-50-51.

Appellants now appeal the district courts' orders to us.

## II. DISCUSSION

The Appellants present a host of arguments directed to the merits of the orders enforcing the IRS subpoenas, the lion's share of which we do not discuss. Instead, we focus principally on the propriety of a meaningful adversarial hearing in the context of a motion to quash summonses issued by the Service.

We have held that "[a]n order enforcing an IRS summons will not be reversed unless clearly erroneous." United States v. Morse, 532 F.3d 1130, 1131 (11th Cir. 2008) (per curiam). In addition, we review a district court's denial of discovery and an evidentiary hearing for abuse of discretion. United States v. Harris, 628 F.2d 875, 884 (5th Cir. 1980).

At the outset, we recognize the Service's obligation to administer and enforce Congress' power to lay and collect taxes. See Morse, 535 F.3d at 1131; see also U.S. Const. amend. XVI. Towards that end, 26 U.S.C. § 7602 vests the Service with the authority to issue a summons "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability." Id. § 7602(a). Although its "power to investigate . . . has been described as broad and expansive," see La Mura v. United States, 765

F.2d 974, 979 (11th Cir. 1985) (quotation marks and citation omitted), the Service's authority is not without limits and "[n]o summons may be issued . . . with respect to any person if a Justice Department referral is in effect with respect to such person." Id. § 7602(d)(1).

Because a summons issued by the Service is not self-executing, the Service must apply to the appropriate district court for enforcement. See id. § 7604(b). The Service must make a four-step prima facie showing to have a summons enforced. The Service must show: (1) "that the investigation will be conducted pursuant to a legitimate purpose,"(2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the Commissioner's possession," and (4) "that the administrative steps required by the Code have been followed." United States v. Powell, 379 U.S. 48, 57-58, 85 S. Ct. 248, 255 (1964). We have held that the Service "may satisfy its minimal burden by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." Morse, 532 F.3d at 1132 (citation omitted).

Once the Service has made its prima facie showing, "the burden shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." Id. (citation omitted).

11

How a taxpayer might meet that burden is pivotal in the cases before us.

We have held that a taxpayer is entitled to a limited adversarial hearing in order to ascertain whether the Service issued a given summons for an improper purpose. United States v. Southeast First Nat'l Bank, 655 F.2d 661, 668 (5th Cir. Sept. 1981). Moreover, we have held that "an allegation of improper purpose is sufficient to trigger a limited adversary hearing where the taxpayer may question IRS officials concerning the Service's reasons for issuing the summons." Id. at 667. By our lights, Southeast First National Bank is the legitimate offspring of the Supreme Court's seminal decision in Powell. Powell reminds us that "the adversarial hearing to which the taxpayer is entitled before enforcement is ordered" is not "meaningless," and that "[a]t the hearing he may challenge the summons on any appropriate ground." Powell, 379 U.S. at 58, 85 S. Ct. at 255 (quotation marks and citation omitted). That said, we also recognize the limits of any such adversarial hearing and agree with our brethren in the Fifth Circuit that "[d]epositions, interrogatories, and the rest of the panoply of expensive and time-consuming pretrial discovery devices may not be resorted to as a matter of course and on a mere allegation of improper purpose." In re E.E.O.C., 709 F.2d 392, 397-98 (5th Cir. 1983) (quotation marks and citation omitted).

Generally, the scope of any adversarial hearing in this area is left to the

12

discretion of the district court.[3]  Although our standard as articulated in <u>Southeast First National Bank</u> is permissive, it does not categorically strip district courts of their discretionary power to determine whether an adversarial hearing is appropriate.  <u>See</u> <u>Southeast First Nat'l Bank</u>, 655 F.2d at 668 ("We therefore hold that although the district court may in [its] discretion restrict or deny prehearing discovery, [it] may not refuse a limited enforcement hearing <u>when</u> <u>to</u> <u>do</u> <u>so</u> would deny taxpayer his sole means of demonstrating the truth (or falsity) of his allegations.") (citation omitted and emphasis added).  We note, however, the danger of circumscribing such a hearing to the extent that its utility is altogether frustrated.

We are mindful that our precedent in this area is not in accord with that of a number of our sister circuits.  <u>See</u>, <u>e.g.</u>, <u>United States v. Tiffany Fine Arts, Inc.</u>, 718 F.2d 7, 14 (2d Cir. 1983), <u>aff'd</u>, 469 U.S. 310, 105 S. Ct. 725; <u>United States v. Kis</u>, 658 F.2d 526, 539-540 (7th Cir. 1981) (requiring the taxpayer to develop facts

---

[3] We recognize that the Supreme Court has indicated as much in <u>Tiffany Fine Arts, Inc. v. United States</u>, 469 U.S. 310, 324 n.7, 105 S. Ct. 725, 732 (1985).  We note that we have never held that a taxpayer's right to a limited adversarial hearing is absolute.  However, we view our precedent in this area as in line with the Supreme Court's language in <u>Donaldson</u> and <u>Powell</u>. <u>See</u> <u>Donaldson v. United States</u>, 400 U.S. 517, 529, 91 S. Ct. 534, 541 (1971) (stating that a summary proceeding may be used in a summons enforcement case "so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available"); <u>United States v. Powell</u>, 379 U.S. 48, 58, 85 S. Ct. 248, 255 (1964) (reminding us that "the adversarial hearing to which the taxpayer is entitled before enforcement is ordered" is not "meaningless," and that "[a]t the hearing he may challenge the summons on any appropriate ground").

13

sufficient to allow court to draw inference of wrongful conduct by government before adversarial hearing can be granted); United States v. Nat'l Bank of South Dakota, 622 F.2d 365, 367 (8th Cir. 1980) (per curiam).  However, we are convinced that Southeast First National Bank's considered review of our earlier line of cases in this area strikes the appropriate balance between honoring the intended summary nature of the summons proceeding and protecting the interests of the taxpayer.[4]  Our rationale in Southeast First National Bank bears repeating.

> Without a right to either pretrial discovery, a right severely curtailed in Harris, or an adversary hearing before the district judge, a taxpayer threatened with judicial enforcement of an IRS summons will have no meaningful opportunity to determine whether the IRS issued the summons for a proper purpose.  Instead, the taxpayer, who normally has no knowledge of the facts necessary to establish institutional purpose, will be forced to accept on blind faith the IRS' protestations that it had a civil motive for issuing the summons.  Given these circumstances, we simply refuse to create a rule that would require taxpayer to allege a factual background before he is entitled to the initial, basic discovery provided by an adversary hearing.  To accept this view would impose an unreasonable circular burden on the taxpayer: the facts that he must show to obtain discovery are only available through discovery.  We will not saddle the taxpayer with this Catch 22.

Id. (quotation marks and citation omitted).

---

[4] We find the notion that passage of I.R.C. § 7602(b) and (c) created a bright-line rule precluding a determination of improper motive in the absence of a Justice Department referral unpersuasive.  See generally In re E.E.O.C., 709 F.2d at 398-99 (discussing legislative modification of pre-summons enforcement discovery standards).  First, we are aware of no Eleventh Circuit precedent recognizing such a rule.  Second, such a rule implies that improper motive or purpose can only mean the issuance of a summons in order to conduct a criminal investigation.  Our reading of improper motive or purpose is not so narrowly circumscribed.

14

In Nero Trading's case, the district court's failure to articulate its reasons for forgoing an evidentiary hearing and denying Nero Trading's motion to quash leads us to conclude that Nero Trading was not afforded a meaningful opportunity to question the Service concerning its reasons for issuing the summonses. The district court refused a limited adversarial hearing and issued a perfunctory order with only passing reference to any legal standard and no reference at all to either the merits of the Service's prima facie case or Nero Trading's claims in rebuttal. As regards Ironwood Trading's case, because the district court at least allowed a limited adversarial hearing, albeit a truncated one, we cannot find that the district court abused its discretion.

### III. CONCLUSION

Nero Trading appeals the district court's denial of its petition to quash administrative summonses issued by the Service and Ironwood Trading appeals the district court's denial of its like motion to quash and the court's grant of the government's motion to enforce the summonses. Because the district court did not explain its decision to not hold an evidentiary hearing in Nero Trading's case and did not sufficiently explain its rationale for denying Nero Trading's motion to quash the summonses, we cannot adequately review the district court's decision in that case. As regards Ironwood Trading's case, we find that the district court did

15

not abuse its discretion in denying Ironwood's motion to quash and granting the government's motion to enforce the summonses for substantially the same reasons stated in the district court memorandum and order. See Ironwood Trading, LLC v. United States, 2008 WL 817066 (M.D. Fl. March 25, 2008). Accordingly, we REVERSE and REMAND to the United State District Court for the Northern District of Georgia for proceedings consistent with this opinion and AFFIRM the judgment of the United States District Court for the Middle District of Florida.

**REVERSED and REMANDED, in part, and AFFIRMED, in part.**