# United States Court of Appeals
## For the First Circuit

No. 08-2515

SUGARLOAF FUNDING, LLC; DERRINGER TRADING, LLC;
KNIGHT TRADING, LLC; PORTFOLIO PROPERTIES, INC.;
WARWICK TRADING, LLC; JOHN E. ROGERS,

Petitioners, Appellants,

v.

U.S. DEPARTMENT OF THE TREASURY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Jerome R. Weitzel, with whom Paul J. Kozacky, Kozacky &
Weitzel, P.C., Richard E. Quinby, Lauren J. Coppola and Craig &
MaCauley, were on brief, for appellants.
Rachel I. Wollitzer, Attorney, Tax Division, Department of
Justice, with whom Michael J. Sullivan, United States Attorney,
John A. DiCicco, Acting Assistant Attorney General, Gilbert S.
Rothenberg, Acting Deputy Assistant Attorney General and Robert
W. Metzler, Attorney, Tax Division, Department of Justice, were
on brief, for appellee.

October 7, 2009

**HOWARD**, <u>Circuit Judge</u>.  This case is one of more than a dozen in federal courts across the country related to an Internal Revenue Service ("IRS") investigation into possible improper tax shelters.[1]  As in the other cases, the targets of the investigation petitioned the district court to quash administrative summonses issued by the IRS.  Approving a magistrate judge's report and recommendation, the district court denied the motions to quash and ordered the summonses enforced.  The petitioners timely appealed.  Consistent with every other court to address this issue, we affirm the district court.[2]

---

[1]See <u>In re: Good Karma, LLC</u>, 528 F. Supp. 2d 1361, 1362-63 sch. A (J.P.M.L. 2007)(denying motion for consolidation of pre-trial proceedings).

[2]See, e.g., <u>Bodensee Fund, LLC</u> v. <u>United States</u>, No. 07-3209, 2008 WL 4490361 (D.N.J. Sept. 30, 2008); <u>Howa Trading, LLC</u> v. <u>United States Dep't of Treasury-Internal Revenue Service</u>, No. 3:07CV324-R, 2008 WL 2323872 (W.D.N.C. June 2, 2008); <u>Bodensee Fund, LLC</u> v. <u>United States Dep't of Treasury</u>, No. 07-MC-0111, 2008 WL 1930967 (E.D. Pa. May 2, 2008); <u>Ironwood Trading, LLC</u> v. <u>United States</u>, No. 8:07-mc-59-T-30MSS, 2008 WL 817066 (M.D. Fla. Mar. 25, 2008), <u>aff'd</u>, <u>Nero Trading, LLC</u> v. <u>United States</u>, 570 F.3d 1244 (11th Cir. 2009); <u>Good Karma, LLC</u> v. <u>United States</u>, 546 F. Supp. 2d 597 (N.D. Ill. 2008); <u>Sterling Trading, LLC</u> v. <u>United States</u>, 553 F. Supp. 2d. 1152 (C.D. Cal. 2008); <u>Lyons Trading, LLC</u> v. <u>United States</u>, No. 3:07-mc-13, 2008 WL 361533 (E.D. Tenn. Feb. 8, 2008); <u>Rook Trading, LLC</u> v. <u>United States</u>, No. 1:07-651 (W.D. Mich. Dec. 19, 2007); <u>Tiberius Trading, LLC</u> v. <u>United States</u>, No. 1:07-718 (W.D. Mich. Dec. 19, 2007).

# I.  Background

The IRS investigation is focused on transactions that generated losses claimed from writing down the value of "distressed debt" consisting of consumer accounts receivable obtained from one or more Brazilian retail stores.  According to an IRS Coordinated Issue Paper ("CIP")[3] issued in April 2007, such "distressed asset and debt" transactions (known as "DAD tax shelters") generate tax losses that are not allowable as deductions.  In a DAD shelter, a foreign entity that does not pay United States taxes sells purportedly high-basis, low-value debt (the "distressed debt") to a United States entity taxed as a partnership in exchange for a payment that is a very small percentage of the face value of the debt.  The United States entity then contributes the distressed debt to other entities taxed as partnerships -- partnerships in which interests are sold to tax shelter participants.  The shelter participants then claim some or all of the face value of the distressed debt as a loss to offset other earned income.  The IRS contends that U.S. taxpayers participating in the Brazilian debt DAD shelters claimed losses of approximately $39 million in 2003 and $119 million in 2004.  The IRS is investigating the veracity of these claimed losses by examining the returns filed by the entities

---

[3]The IRS issues CIPs to "provid[e] guidance to field examiners and to ensur[e] uniform application of the law" relating to "complex and significant industry wide issues."  Internal Revenue Service publication, available at http://www.irs.gov/businesses/article/0,,id=96445,00.html.

that pass on the losses to U.S. taxpayers and those filed by the individual taxpayers.

## II.  The parties

The appellants are engaged in the business of consumer receivables management and collection.  They partner with creditors for the servicing and collecting of consumer receivables in a global industry fueled by increasing levels of consumer debt, increasing defaults of the receivables, and utilization of third-party providers to collect such receivables.

Appellant John E. Rogers, an attorney with an MBA in international finance, was the driving force behind the appellants' involvement in the Brazilian debt market.  Jetstream Business, Ltd.[4] ("Jetstream") was Rogers's platform for international investment opportunities.  Jetstream is the Tax Matters Partner of appellants Derringer Trading, LLC ("Derringer") and Knight Trading, LLC ("Knight").  Rogers, in turn, is the sole shareholder of appellant Portfolio Properties, Inc. ("Portfolio"), an Illinois corporation that is the sole shareholder of Jetstream.  Appellant Warwick Trading, LLC ("Warwick"), was formed by Jetstream as a possible vehicle through which to invest.  In 2006, Derringer and Knight were transferred to appellant Sugarloaf Fund, LLC

---

[4]Jetstream was a British Virgin Islands limited company during the time period relevant to this appeal.

("Sugarloaf"), a Delaware company.  Rogers is the general manager of Sugarloaf.

### III.  The summonses and prior proceedings

In June 2007, the IRS issued a set of administrative summonses to Massachusetts resident Michael Hartigan ("Hartigan"), an attorney, directing him to appear before IRS Revenue Agent Larry Weinger to testify and produce for examination documents and information relating to Derringer, Knight, Portfolio, Sugarloaf and Warwick.  A few days later, Hartigan received a second summons from the IRS, directing him to appear before IRS Agent Kimberlee Loren to testify and produce documents regarding Rogers.  The first set was served on Hartigan because he claimed losses on his joint income tax return based on his wife's interest in Derringer and Knight.[5]  The second was based on his relationship with Rogers, as

---

[5]The summons regarding Sugarloaf was typical of this first set served on Hartigan.  It sought:

1. All documents, including but not limited to engagement letters, representation letters, agreements, invoices, billing records, fee allocations, and correspondence related to any fees for legal, professional, management, accounting and tax advice and assistance incurred by you and/or any entity controlled by you in connection with Sugarloaf Fund, LLC, and/or its activities.

2. All minutes, notes, correspondence, emails, calendar entries, and other recordings relating to or reflecting meetings, conferences and telephone conversations in which Sugarloaf Fund, LLC, and/or its activities was discussed.

3.  All documents showing payments of any funds, including, but not limited to fees, paid or received by

the IRS believed that Hartigan, in addition to receiving fees from participants, also assisted Rogers in organizing, managing and selling interests in the various entities.[6]

The petitioners timely filed a motion to quash the summonses, claiming that the IRS was engaging in a nationwide pattern of harassment.[7] The government moved to deny the motion to quash and for enforcement of the summonses. After a hearing on the petitioners' motion for an evidentiary hearing, the magistrate judge denied both the motion for a hearing and the motion to quash, while simultaneously recommending the enforcement of the summonses. The district court adopted the report and recommendation. This appeal followed.

## IV. Discussion

The IRS has "expansive information-gathering authority" to determine tax liability under the Internal Revenue Code, including by issuance of summonses to taxpayers and third-party

---

any party in connection with Sugarloaf Fund, LLC, and/or its activities.

[6]The second summons contained forty three specific document requests, broken down into the following categories: 1) materials related to Rogers's marketing efforts; 2) engagement letters and documents related to participants' involvement; 3) documents discussing expected tax benefits; 4) legal or tax opinions; 5) information about fees paid in connection with the shelters; and 6) documents related to Rogers's role.

[7]Even though they were not the summoned parties, the petitioners are permitted to move to quash. See 26 U.S.C. § 7609(b)(2).

-6-

record holders.  United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984); 26 U.S.C. § 7602.  Taxpayers may petition to quash such summonses and the IRS may petition to enforce them.  26 U.S.C. §§ 7604, 7609.  Enforcement proceedings are designed to be summary in nature.  Donaldson v. United States, 400 U.S. 517, 529 (1971).  "The court's role is to ensure that the IRS is using its broad authority in good faith and in compliance with the law."  United States v. Gertner, 65 F.3d 963, 966 (1st Cir. 1995).

Regardless of who initiates the action, the court follows a familiar structured analysis in a summons enforcement proceeding.  Gertner, 65 F.3d at 966.  The IRS must first make a prima facie showing "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed."  United States v. Powell, 379 U.S. 48, 57-58 (1964).  The IRS need only make a "minimal" showing.  See Gertner, 65 F.3d at 966 ("This burden is not taxing, so to speak.").  An affidavit of the investigating agent that the Powell requirements are satisfied is sufficient to make the prima facie case.  Id.; see also United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993); United States v. Alphin, 809 F.2d 236, 238 (4th Cir. 1987); In re Newton, 718 F.2d 1015, 1019 (11th Cir. 1983); United States v. Will, 671 F.2d 963, 966 (6th Cir. 1982);

-7-

United States v. Kis, 658 F.2d 526, 538 (7th Cir. 1981); United States v. Garden State Nat'l Bank, 607 F.2d 61, 68 (3d Cir. 1979); Howa Trading, 2008 WL 2323872 at *4; United States v. Thomas, 254 F. Supp. 2d 174, 180 (D. Me. 2003).

Once the IRS has made this showing, the burden shifts to the taxpayer to disprove one or more of the Powell requirements, or to show that enforcement would be "an abuse of process, e.g., that the summons was issued in bad faith for an improper purpose." Sterling Trading, 553 F. Supp. 2d at 1155-56 (C.D. Cal. 2008) (citing Liberty Fin. Serv. v. United States, 778 F.2d 1390, 1392 (9th Cir. 1985)). The taxpayer's burden is heavy, and he "must allege specific facts and evidence to support his allegations." Id. at 1156. The district court found that the appellants failed to meet their ultimate burden. After reviewing the ruling on the motions to quash for abuse of discretion, Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 66 (1st Cir. 2003), we affirm.

A.  The prima facie case

The appellants first argue that the district court erred when it concluded that the sworn declarations from Weigner and Loren were sufficient to establish the IRS's prima facie case under Powell.

Weigner's declaration stated that the summonses were issued for the purpose of investigating the appellants' returns because they may be involved in potentially abusive DAD tax

shelters. More specifically, Weinger stated that the IRS examinations concerned the correctness of partnership returns filed by Sugarloaf, Warwick, Derringer and Knight for various tax years between January 1, 2003 and December 31, 2005. The examination also implicated returns filed by individual participants who claimed losses through their interests in these entities.

Weinger further stated that Portfolio's S-corporation return for tax years 2003-2005 was a subject of his examination, as was Rogers, indirectly, because he was Portfolio's sole shareholder, and Portfolio's losses flowed directly through to his individual returns.

Regarding the summonses at issue, Weinger stated that after following all IRS procedural requirements, the summonses were issued to Hartigan because he, through his wife (with whom he files a joint tax return) purchased tax shelters involving several tiers of LLCs receiving and contributing distressed debt to other LLCs, transactions appearing similar to the DAD shelters described in the CIP. Hartigan also promoted the sale of interests in similar LLCs to others. According to Weinger, Hartigan's wife indirectly owned between 96 and 98 percent of Derringer, and over 96 percent of Knight, during the relevant time period. Losses from each entity were claimed on the Hartigans' joint returns. Weinger also stated that an investor in and seller of tax shelters, such as Hartigan, should have documents and information responsive to the summonses,

and that such documents would provide information to the IRS about income and expenses, the circumstances surrounding the loss-generating transactions and their anticipated tax benefits, all of which would be relevant to the IRS investigation. In addition, Hartigan would be expected to have information important to the IRS in making a penalty determination, such as the nature of due diligence performed by the appellants, and the extent of their reliance on an advisor. Finally, Weinger stated that while the IRS had obtained some information from taxpayers and third parties, it was not in possession of the summoned information.

Agent Loren's declaration indicated that she was assigned to examine Rogers's role in organizing, managing and selling tax shelters; his compliance with various IRS registration and list maintenance requirements and potential penalties for violating them; and whether he made false or fraudulent statements in connection with selling and organizing the shelters. The declaration noted that the forty-three specific document requests would provide information to the IRS relevant to the Rogers examination. For example, where Hartigan personally marketed to participants, he would ordinarily have correspondence addressing tax implications. Such documents might help determine the legality of the shelters, the extent of Rogers's involvement and any liability for penalties. Also, information about fees paid to Rogers or Hartigan would go toward explaining Rogers's role in

-10-

particular transactions.  While Loren noted that the IRS had obtained copies of documents purportedly prepared by Rogers or Hartigan, those documents were obtained from third parties.

The district court concluded that the IRS easily met Powell's prima facie test.  Considering the hearty content of the agents' declarations, and that even "bareboned allegations" can suffice to support the prima facie showing, cf. Gertner, 65 F.3d at 968, we agree that the IRS met its initial burden.

B.  The appellants' response

The appellants advance three theories in support of their argument that, contrary to the district court's conclusion, they successfully rebutted the IRS's prima facie case.  The first is that the summoned information is not relevant to a legitimate purpose.  Next, they argue that the summonses themselves were not issued for a legitimate purpose.  And finally, they claim that the summoned documents are already in the IRS's possession.  We discuss each in turn.

1.  Relevance to a legitimate purpose

The appellants' first substantive argument is that the information sought by the summonses is not relevant to a legitimate purpose.  They set forth three supporting reasons: first, that the transactions in which they are engaged are different from the DAD shelter described in the CIP; second, that the IRS improperly

targeted Hartigan's (and others') motives; and third, that the summonses were overbroad.

We start our analysis by noting that "the concept of relevance under § 7602 is broader than that under the Federal Rules of Evidence." Zugerese Trading LLC v. Internal Revenue Service, 2009 WL 1706583, No. 08-30894 (5th Cir. June 18, 2009) (citing Arthur Young & Co., 465 U.S. at 813-14 n.11). Moreover, the IRS may investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Powell, 379 U.S. at 57 (quoting United States v. Morton Salt Co., 338 U.S. 632, 642-43 (1950)).

The gist of the appellants' first argument is that the transactions at issue here are not unlawful DAD shelters. Given the broad sweep of the IRS's investigative powers, however, such a determination is beyond the scope of the inquiries undertaken by the district court and this court in the summons enforcement context. See Superior Trading, 2008 WL 5192379 at *6,  n. 10 (court in summons enforcement proceeding "need not address whether transactions were lawful"). "The function of the [court] in an enforcement proceeding is not to test the final merits of the claimed tax deduction, but to assess within the limits of Powell whether the IRS issued its summons for a legitimate tax determination purpose." Howa Trading, 2008 WL 2323872 at *4 (citing United States v. White, 853 F.2d 107, 116 (2nd Cir. 1988)).

Accordingly, we reject the appellant's argument that the claimed legality of their transactions provides a basis to quash the summonses.

The appellants next argue that the motives of Hartigan and other persons or entities involved in the transactions at issue are "completely irrelevant" to the IRS's investigation. Again, given the wide breadth of relevance in the present context, we disagree. In a broad sense, the IRS is investigating the validity of the partnerships themselves for purposes of assessing the validity of the claimed tax losses. Thus, the IRS is permitted to inquire as to whether the parties "intended to join together as partners to conduct business activity for a purpose other than tax avoidance." Adantech LLC v. Comm'r, 331 F.3d 972, 978 (D.C. Cir. 2003).

Next, the appellants' overbreadth argument focuses on the summonses' inclusion of the term, "all documents," which, they claim, makes the summonses overbroad as a matter of law. The two cases upon which they rely, however, do not support this proposition. Both United States v. Theodore, 479 F.2d 749 (4th Cir. 1973) and Racca v. United States, 2007 WL 1108872, No. C06-1822RSM, (W.D. Wash. Apr. 11, 2007), contain fact-specific analyses that do not necessarily apply beyond their particular circumstances. Indeed, there are no cases that universally proscribe the use of "all documents" language. To the contrary, as

the Fifth Circuit noted in rejecting an overbreadth claim in one of the many cases involving the same players and issues present here, a summons is not overbroad if it "describes the requested material with sufficient particularity to permit the summoned party to respond adequately." Zugarese Trading, 2009 WL 1706583 at *1.[8] Here, the use of the term "all documents" is limited by reference to particular subject matters. We therefore conclude that the summonses are not overly broad.

## 2. Issuance for a legitimate purpose

The appellants next argue that the IRS did not issue the summonses for a legitimate purpose. Specifically, they claim that the IRS intended to use the summonses in order to avoid more restrictive Tax Court discovery rules, to harass them, and to improperly extend the statute of limitations applicable to the examination of tax returns.

By way of background, a notice of deficiency permits an individual taxpayer to bring a Tax Court proceeding to challenge the tax liability claimed by the IRS in the notice. 26 U.S.C. § 6213. In the partnership context, a notice of final partnership administrative adjustment (FPAA) is analogous to a notice of deficiency. 26 U.S.C. § 6226. Discovery in Tax Court proceedings is more limited than that permitted under the Federal Rules of

---

[8]Hartigan, the "summoned party" has interposed no objections to the summonses.

Civil Procedure.  Schneider Interests, L.P. v. Comm'r, 119 T.C. 151 (2002); see also United States v. Admin. Enter. Inc., 46 F.3d 670, 672 (7th Cir. 1995) ("Discovery in Tax Court proceedings is traditionally informal and noncoercive . . . .").

"Courts look to the timing of a summons relative to the commencement of [tax court] litigation in order to evaluate validity in the face of such allegations." Sterling Trading, 553 F. Supp. 2d at 1159-60 (citing PAA Mgmt., Ltd. v. United States, 962 F.2d 212, 219 (2d Cir. 1992)).  "Where the summons is issued before the commencement of judicial proceedings, that summons is generally not found to undermine the discovery process."  Id. Here, as the district court noted, it is undisputed that the IRS issued the summonses before issuing the FPAA to Derringer.[9]  Thus, "the timing of the summons does not suggest that the IRS intended the summons as a pre-litigation discovery tool . . . ."  Id.

The appellants argue that because the FPAA was a "final" determination of Derringer's tax liability, the summons could only have been for illegitimate purposes.  This position, however, overstates the impact of the FPAA.  "The FPAA is not 'final' in the sense that its issuance necessarily obviates the need for further information, [or] brings the curtain down on the IRS's administrative or investigative role . . . ."  PAA Mgmt., 962 F.2d

_____

[9]The Derringer FPAA was issued approximately six weeks after the summons and two weeks after the summons return date.

-15-

at 219. Against this backdrop, the issuance of the FPAA does not invalidate the legitimacy of the Derringer summons.

The appellants also rely on Rogers's version of a conversation with Weinger in which Weinger allegedly said that the IRS auditors were "being guided by district counsel who planned to litigate regardless of the result of the audit and notwithstanding whether petitioners were able to prove bad business debt through the audit." The appellants rely on PAA Mgmt. Ltd. v. United States, No. 91C168, 1992 WL 346314 (N.D. Ill. Nov. 19, 1992), for the proposition that the motive to use in litigation materials obtained by summons is evidence of an improper purpose. In PAA Mgmt, however, the court found that the IRS agent explicitly admitted that the IRS did not need the summoned materials for its examination, but rather that it only sought the material to "protect the government's interests" in Tax Court. 1992 WL 346314 at *5-6. There is no such admission here. Instead, the declaration in this case states that the information sought in the Derringer summons "is still necessary" to the determination of the accuracy of Derringer's returns. And contrary to the appellants' assertions, Weinger's alleged statement (which was in connection with a different summons enforcement proceeding[10]) does not compel an outcome in their favor here, particularly in light of the fact that in the other proceeding Weinger expressly denied being

---

[10] Ironwood Trading, supra.

-16-

directed by counsel to seek specific documents.  Moreover, there is no prohibition against IRS agents speaking with district counsel during an examination.  Good Karma, LLC, 546 F. Supp. 2d at 604. Accordingly, we reject the appellants' discovery claim.

The appellants' claim of harassment[11] is based on two specific claims, neither of which is sufficient to merit relief. First, they argue that the IRS threatened the imposition of severe penalties if they did not settle.  The IRS does not dispute that it sought settlement; however, "The mere fact that the IRS attempted to settle with taxpayers . . . hardly amounts to a 'threat.'" Sterling Trading, 553 F. Supp. 2d at 1158.  Next, the appellants claim that the IRS threatened one of their attorneys.  According to an affidavit from the attorney, IRS agents believed that the attorney's responses to document requests were incomplete and told the attorney that failure to respond could result in a disciplinary referral.  This conduct does not rise to the level of harassment, either.  In the first place, the attorney did not characterize the agents' communications as "threats," nor have other courts viewed them as "threats."  See, e.g., Superior Trading, 2008 WL 5192379 at *6 (citing Ironwood Trading, 2008 WL 817006 at *3).  Perhaps more importantly, the alleged threats involved an individual and

[11]The appellants' overarching theory is that the large number of pending legal proceedings is evidence of a nationwide harassment effort.

partnership entity distinct from any in this case. Accordingly, the appellants' claim of harassment fails.

We also reject the appellants' argument that the summonses were issued as a means to improperly extend the applicable statutes of limitation.[12] As the district court noted, and as the appellants concede, it was the filing of the petition to quash that tolled the statute, not the issuance of the summonses. 26 U.S.C. § 7609(e)(1). The statute is also tolled if the summoned party does not comply within six months. 26 U.S.C. § 7609(e)(2).[13] In the end, the appellants fail to cite any evidence in support of their statute of limitations argument.

Based on the foregoing, we affirm the district court's finding that the summonses were not issued for an improper purpose.

### 3. Documents already possessed

The appellants' final substantive argument is that the IRS is already in possession of the summoned documents. They rely on the fact that Rogers and the appellants' accountant have already appeared for interviews and produced documents. As previously noted, however, the IRS is entitled to obtain relevant records from third parties to compare for accuracy any records obtained from the

---

[12]The IRS is generally authorized to audit tax returns within three years of their filing. 26 U.S.C. §§ 6501, 6229.

[13]The limitations period with respect to Derringer and Rogers were tolled by the issuance of an FPAA and deficiency notice, respectively.

-18-

taxpayer. While the appellants claim that "more than one million pages of documents" have been produced, they do not suggest how those documents are responsive to the summonses issued to Hartigan. See Sterling Trading, 553 F. Supp. 2d at 1161 (rejecting identical argument). Nor do they dispute that Hartigan has not yet provided testimony, as was requested. The appellants' claim that the IRS is already in possession of the summoned documents therefore fails.

C. Other arguments

The appellants make two additional arguments, neither of which require extended discussion. The first is that the district court should have stricken the IRS's petition to enforce, or deemed all of the appellants' allegations below admitted, because the IRS did not file an answer or a motion under Rule 12 or Rule 56 of the Federal Rules of Civil Procedure, but instead responded to the petition with its own motion to deny that of the appellants and to enforce the summonses. We disagree. While the federal rules apply to these proceedings, "they are not inflexible in this application," Donaldson, 400 U.S. at 528, since Rule 81(a)(5) explicitly states that the rules may be limited by the district court. Moreover, given that the IRS's motion "mirror[ed] a 12(b)(6) motion to dismiss," Cosme v. United States, 708 F. Supp. 45, 48 (E.D.N.Y. 1989), we agree with the Fifth Circuit that the IRS "sufficiently responded to the petition to quash . . . ." Zugerese, 2009 WL 1706583 at *2.

The appellants also claim that the district court erred in denying them discovery and an evidentiary hearing before ruling on the dueling motions. Yet as the Supreme Court has held, "Summons enforcement proceedings should be summary in nature and discovery should be limited." United States v. Stuart, 489 U.S. 353, 369 (1989). Accordingly, the decision whether to conduct an evidentiary hearing in a summons enforcement proceeding is within the district court's discretion. United States v. Tiffany Fine Arts, 469 U.S. 310, 324 n.7. (1985); Gertner, 65 F.3d at 969. "There is no hard-and-fast rule compelling an evidentiary hearing," Gertner, 65 F.3d at 967, and the "district court may, in appropriate circumstances, forgo such a hearing and decide the issues on the existing record." Id. In order to proceed to an evidentiary hearing, a taxpayer must make a sufficient threshold showing that there was an improper purpose behind an IRS summons. Copp v. United States, 968 F.2d 1435, 1438 (1st Cir. 1992). To make this showing, the taxpayer must do more than allege an improper purpose; he must introduce evidence to support his allegations. Id. Here, the district court supportably found that the appellants failed to make this threshold showing. In so finding, the district court did not abuse its discretion.

## V. Conclusion

The judgment of the district court is **affirmed.**