Justice KAGAN delivered the opinion of the Court.
The Internal Revenue Service (IRS or Service) has broad statutory authority to summon a taxpayer to produce documents or give testimony relevant to determining tax liability. If the taxpayer fails to comply, the IRS may petition a federal district court to enforce the summons. In *2365 an enforcement proceeding, the IRS must show that it issued the summons in good faith.
This case requires us to consider when a taxpayer, as part of such a proceeding, has a right to question IRS officials about their reasons for issuing a summons. We hold, contrary to the Court of Appeals below, that a bare allegation of improper purpose does not entitle a taxpayer to examine IRS officials. Rather, the taxpayer has a right to conduct that examination when he points to specific facts or circumstances plausibly raising an inference of bad faith.
I
Congress has "authorized and required" the IRS "to make the inquiries, determinations, and assessments of all taxes" the Internal Revenue Code imposes. 26 U.S.C. § 6201(a). And in support of that authority, Congress has granted the Service broad latitude to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax ..., or collecting any such liability." § 7602(a). Such a summons directs a taxpayer (or associated person [1]) to appear before an IRS official and to provide sworn testimony or produce "books, papers, records, or other data ... relevant or material to [a tax] inquiry." § 7602(a)(1).
If a taxpayer does not comply with a summons, the IRS may bring an enforcement action in district court. See §§ 7402(b), 7604(a). In that proceeding, we have held, the IRS "need only demonstrate good faith in issuing the summons." United States v. Stuart, 489 U.S. 353, 359, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989). More specifically, that means establishing what have become known as the Powell factors: "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the [Internal Revenue] Code have been followed." United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). To make that showing, the IRS usually files an affidavit from the responsible investigating agent. See Stuart, 489 U.S., at 360, 109 S.Ct. 1183. The taxpayer, however, has an opportunity to challenge that affidavit, and to urge the court to quash the summons "on any appropriate ground"-including, as relevant here, improper purpose. See Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).
The summons dispute in this case arose from an IRS examination of the tax returns of Dynamo Holdings Limited Partnership (Dynamo) for the 2005-2007 tax years. The IRS harbored suspicions about large interest expenses that those returns had reported. As its investigation proceeded, the Service persuaded Dynamo to agree to two year-long extensions of the usual 3-year limitations period for assessing tax liability; in 2010, with that period again drawing to a close, Dynamo refused to grant the IRS a third extension. Shortly thereafter, in September and October 2010, the IRS issued summonses to the respondents here, four individuals associated with Dynamo whom the Service believed had information and records relevant to Dynamo's tax obligations. None of *2366 the respondents complied with those summonses. In December 2010 (still within the augmented limitations period), the IRS issued a Final Partnership Administrative Adjustment proposing changes to Dynamo's returns that would result in greater tax liability. Dynamo responded in February 2011 by filing suit in the United States Tax Court to challenge the adjustments. That litigation remains pending. A few months later, in April 2011, the IRS instituted proceedings in District Court to compel the respondents to comply with the summonses they had gotten.
Those enforcement proceedings developed into a dispute about the IRS's reasons for issuing the summonses. The IRS submitted an investigating agent's affidavit attesting to the Powell factors; among other things, that declaration maintained that the testimony and records sought were necessary to "properly investigate the correctness of [Dynamo's] federal tax reporting" and that the summonses were "not issued to harass or for any other improper purpose." App. 26, 34. In reply, the respondents pointed to circumstantial evidence that, in their view, suggested "ulterior motive[s]" of two different kinds. App. to Pet. for Cert. 72a. First, the respondents asserted that the IRS issued the summonses to "punish[ ] [Dynamo] for refusing to agree to a further extension of the applicable statute of limitations." App. 52. More particularly, they stated in sworn declarations that immediately after Dynamo declined to grant a third extension of time, the IRS, "despite having not asked for additional information for some time, ... suddenly issued" the summonses. Id., at 95. Second, the respondents averred that the IRS decided to enforce the summonses, subsequent to Dynamo's filing suit in Tax Court, to "evad[e] the Tax Court['s] limitations on discovery" and thus gain an unfair advantage in that litigation. Id., at 53. In support of that charge, the respondents submitted an affidavit from the attorney of another Dynamo associate, who had chosen to comply with a summons issued at the same time. The attorney reported that only the IRS attorneys handling the Tax Court case, and not the original investigating agents, were present at the interview of his client. In light of those submissions, the respondents asked for an opportunity to question the agents about their motives.
The District Court denied that request and ordered the respondents to comply with the summonses. According to the court, the respondents "ha[d] made no meaningful allegations of improper purpose" warranting examination of IRS agents. App. to Pet. for Cert. 18a. The court characterized the respondents' statute-of-limitations theory as "mere conjecture." Id., at 14a. And it ruled that the respondents' evasion-of-discovery-limits claim was "incorrect as a matter of law" because "[t]he validity of a summons is tested as of the date of issuance," not enforcement-and the Tax Court proceedings had not yet begun when the IRS issued the summonses. Id., at 15a.
The Court of Appeals for the Eleventh Circuit reversed, holding that the District Court's refusal to allow the respondents to examine IRS agents constituted an abuse of discretion. In support of that ruling, the Court of Appeals cited binding Circuit precedent holding that a simple "allegation of improper purpose," even if lacking any "factual support," entitles a taxpayer to "question IRS officials concerning the Service's reasons for issuing the summons." 517 Fed.Appx. 689, 691 (2013) (quoting United States v. Southeast First Nat. Bank of Miami Springs, 655 F.2d 661, 667 (C.A.5 1981)); see Nero Trading, LLC v. United States Dept. of Treasury, 570 F.3d 1244, 1249 (C.A.11 2009) (reaffirming Southeast ).
*2367 Every other Court of Appeals has rejected the Eleventh Circuit's view that a bare allegation of improper motive entitles a person objecting to an IRS summons to examine the responsible officials.[2] We granted certiorari to resolve that conflict, 571 U.S. ----, 134 S.Ct. 895, 187 L.Ed.2d 701 (2014), and we now vacate the Eleventh Circuit's opinion.
II
A person receiving an IRS summons is, as we have often held, entitled to contest it in an enforcement proceeding. See United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); Powell, 379 U.S., at 57-58, 85 S.Ct. 248;Reisman, 375 U.S., at 449, 84 S.Ct. 508. The power "vested in tax collectors may be abused, as all power" may be abused. Bisceglia, 420 U.S., at 146, 95 S.Ct. 915. In recognition of that possibility, Congress made enforcement of an IRS summons contingent on a court's approval. See 26 U.S.C. § 7604(b). And we have time and again stated that the requisite judicial proceeding is not ex parte but adversarial. See Donaldson v. United States, 400 U.S. 517, 527, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Powell, 379 U.S., at 58, 85 S.Ct. 248;Reisman, 375 U.S., at 446, 84 S.Ct. 508. The summoned party must receive notice, and may present argument and evidence on all matters bearing on a summons's validity. See Powell, 379 U.S., at 58, 85 S.Ct. 248.
Yet we have also emphasized that summons enforcement proceedings are to be "summary in nature." Stuart, 489 U.S., at 369, 109 S.Ct. 1183. The purpose of a summons is "not to accuse," much less to adjudicate, but only "to inquire." Bisceglia, 420 U.S., at 146, 95 S.Ct. 915. And such an investigatory tool, we have recognized, is a crucial backstop in a tax system based on self-reporting. See ibid. (restricting summons authority would enable "dishonest persons [to] escap[e] taxation[,] thus shifting heavier burdens to honest taxpayers"). Accordingly, we long ago held that courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of "oversee[ing] the [IRS's] determinations to investigate." Powell, 379 U.S., at 56, 85 S.Ct. 248. So too, we stated that absent contrary evidence, the IRS can satisfy that standard by submitting a simple affidavit from the investigating agent. See Stuart, 489 U.S., at 359-360, 109 S.Ct. 1183. Thus, we have rejected rules that would "thwart and defeat the [Service's] appropriate investigatory powers." Donaldson, 400 U.S., at 533, 91 S.Ct. 534.
The balance we have struck in prior cases comports with the following rule, applicable here: As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another *2368 person's bad faith, at this threshold stage, will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing. And the rule is little different from the one that both the respondents and the Government have recommended to us.[3]
But that is not the standard the Eleventh Circuit applied. Although the respondents gamely try to put another face on the opinion below, see Brief for Respondents 24-25, and n. 17, we have no doubt that the Court of Appeals viewed even bare allegations of improper purpose as entitling a summons objector to question IRS agents. The court in fact had some evidence before it pertaining to the respondents' charges: The respondents, for example, had submitted one declaration relating the timing of the summonses to Dynamo's refusal to extend the limitations period, see App. 95, and another aiming to show that the IRS was using the summonses to obtain discovery it could not get in Tax Court, see id., at 97-100. But the Eleventh Circuit never assessed whether those (or any other) materials plausibly supported an inference of improper motive; indeed, the court never mentioned the proffered evidence at all. Instead, and in line with Circuit precedent, the court applied a categorical rule, demanding the examination of IRS agents even when a taxpayer made only conclusory allegations. See supra, at 2366. That was error. On remand, the Court of Appeals must consider the respondents' submissions in light of the standard we have stated.
That consideration must as well give appropriate deference to the District Court's ruling. An appellate court, as the Eleventh Circuit noted, reviews for abuse of discretion a trial court's decision to order-or not-the questioning of IRS agents. See 517 Fed.Appx., at 691, n. 2;Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 324, n. 7, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985). That standard of review reflects the district court's superior familiarity with, and understanding of, the dispute; and it comports with the way appellate courts review related matters of case management, discovery, and trial practice. See, e.g.,Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172-173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); Crawford-El v. Britton, 523 U.S. 574, 599-601, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Accordingly, the Court of Appeals must take into account on remand the District Court's broad discretion to determine whether a taxpayer has shown enough to require the examination of IRS investigators.
But two caveats to that instruction are in order here. First, the District Court's decision is entitled to deference only if based on the correct legal standard. See Fox v. Vice, 563 U.S. ----, ----, 131 S.Ct. 2205, 2217, 180 L.Ed.2d 45 (2011) ("A trial court has wide discretion when, but only when, it calls the game by the right rules"). We leave to the Court of Appeals the task of deciding whether the District Court asked and answered the relevant *2369 question-once again, whether the respondents pointed to specific facts or circumstances plausibly raising an inference of improper motive.
And second, the District Court's latitude does not extend to legal issues about what counts as an illicit motive. As indicated earlier, one such issue is embedded in the respondents' claim that the Government moved to enforce these summonses to gain an unfair advantage in Tax Court litigation. See supra, at 2366. The Government responds, and the District Court agreed, that any such purpose is irrelevant because "the validity of a summons is judged at the time" the IRS originally issued the summons, and here that preceded the Tax Court suit. Tr. of Oral Arg. 7; see Reply Brief 19-20; App. to Pet. for Cert. 15a. Similarly, with respect to the respondents' alternative theory, the Government briefly suggested at argument that issuing a summons because "a taxpayer declined to extend a statute of limitations would [not] be an improper purpose," even assuming that happened here. Tr. of Oral Arg. 6. We state no view on those issues; they are not within the question presented for our review. We note only that they are pure questions of law, so if they arise again on remand, the Court of Appeals has no cause to defer to the District Court. Cf. Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("A district court by definition abuses its discretion when it makes an error of law").
For these reasons, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.
It is so ordered.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

The IRS has authority to summon not only "the person liable for tax," but also "any officer or employee of such person," any person having custody of relevant "books of account," and "any other person the [IRS] may deem proper." 26 U.S.C. § 7602(a)(2). For convenience, this opinion refers only to the "taxpayer."

See, e.g.,Sugarloaf Funding, LLC v. United States Dept. of Treasury, 584 F.3d 340, 350-351 (C.A.1 2009) (requiring "a sufficient threshold showing that there was an improper purpose"); Fortney v. United States, 59 F.3d 117, 121 (C.A.9 1995) (requiring "some minimal amount of evidence" beyond "mere memoranda of law or allegations" (internal quotations and alterations omitted)); United States v. Kis, 658 F.2d 526, 540 (C.A.7 1981) (requiring "develop[ment] [of] facts from which a court might infer a possibility of some wrongful conduct"); United States v. Garden State Nat. Bank, 607 F.2d 61, 71 (C.A.3 1979) (requiring "factual[ ] support[ ] by the taxpayer's affidavits").

See Tr. of Oral Arg. 29 (respondents) (The taxpayer is entitled to question the agent "when he presents specific facts from which an improper purpose ... may plausibly be inferred"); id., at 5 (United States) ("[A] summons opponent has to put in enough evidence to at least raise an inference" of improper motive, and "[c]ircumstantial evidence is enough").